FRIEDMAN, Circuit Judge,
dissenting:
In my view, the appropriate and dispositive inquiry in this case is whether the prison officials abused their discretion or otherwise acted unreasonably in requiring the prison inmates, as a condition of their release from various restrictions imposed following a lockdown (including the ability to leave their cells for outdoor exercise, the restriction here at issue), to sign a pledge that they would not engage in violent conduct if they were so released. Since I conclude that the prison officials did not abuse their discretion, I would affirm the district court’s grant of summary judgment dismissing the inmate’s damage suit under 42 U.S.C. § 1983, alleging that denying him outdoor exercise for almost fourteen months because of his refusal to sign the pledge, subjected him to cruel and unusual punishment in violation of the Eighth Amendment.
The appellant Thomas was housed in a maximum security unit of a California state prison. The prison was locked down after another inmate in the unit stabbed and seriously wounded two correctional officers. The lockdown, during which prisoners were confined to their cells and could leave them only in emergencies or for extraordinary circumstances, was in effect for approximately two months.
When the lockdown ended, the prison officials introduced a “modified” program containing many of the same restrictions that had existed during the lockdown, including the prohibition on leaving the cell for outdoor exercise. To leave the “modified” program and to return to a “normal” one, inmates were required to be interviewed and to sign a pledge. In his interviews, Thomas answered “yes” to the following questions on an interview form: “Programming on a level IV general population yard requires participation without violence. Are you willing to commit to this type of program? If not, give details?” “If the facility were returned to normal program, could you program without violence on a level IV general population yard with inmates from all races/ethnics [sic] or past or present gang affiliations?” He answered “no” to the question “Do you have any safety concerns?”
The pledge form that Thomas refused to sign for a substantial period, although he was asked to do so on several occasions and apparently informed that if he did so *1158 he could have outdoor exercise, contained the following statement:
By signing this document, I am advising staff that I want to participate in the program review process being implemented at this time. I am also stipulating that I want to “do my own time” and will program by not participating in gang violence.
Prison officials, headed by the warden, are responsible for maintaining order and imposing discipline in the prison. They must protect the inmates and prison employees, including the guards and correctional officers, against violence and injury. In carrying out these responsibilities, they necessarily must have broad discretion in deciding how to run the prison and to determine what steps are appropriate and necessary to deal with particular situations and problems as they arise. Since the facility where Thomas was housed was a maximum security unit, one must assume that its inhabitants included many violent and dangerous prisoners.
Considering all the circumstances, I cannot say that the prison officials abused their discretion or otherwise acted unreasonably in requiring the inmates of that maximum security unit to sign the pledge form containing the commitment not to engage in violence, as a condition of their returning to the regular prison program, which included outdoor exercise.